**MAYER BROWN LLP**
Sophia M. Mancall-Bitel (SBN 337002)
smancall-bitel@mayerbrown.com
333 South Grand Ave., 47th Floor
Los Angeles, CA 90071
Telephone: (213) 229-9500

Matthew D. Provance (*pro hac vice*)
mprovance@mayerbrown.com
71 South Wacker Dr.
Chicago, IL 60606
Telephone: (312) 782-0600

Michelle J. Annunziata (*pro hac vice*)
mannunziata@mayerbrown.com
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 506-2500

*Attorneys for Defendant Cognizant
Technology Solutions U.S. Corporation*

**DUANE MORRIS LLP**
Sean Patterson (SBN 234565)
cspatterson@duanemorris.com
Meghan C. Killian (SBN 310195)
mckillian@duanemorris.com
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105
Telephone: (415) 957-3000

Gerald L Maatman (*pro hac vice*)
gmaatman@duanemorris.com
Jennifer A. Riley (*pro hac vice*)
jariley@duanemorris.com
Justin Donoho (*pro hac vice*)
jrdonoho@duanemorris.com
190 S. LaSalle Street, Suite 3700
Chicago, IL 60603
Telephone: (312) 499-6700

*Attorneys for Defendant Papa John's
International, Inc.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| COLIN JACKSON, individually and on behalf of classes of similarly situated individuals,<br><br>Plaintiff,<br><br>vs.<br><br>PAPA JOHN'S INTERNATIONAL, INC.; COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION; and DOES 2 through 100, inclusive,<br><br>Defendants. | Case No. 3:23-cv-01933-LB<br><br>**DEFENDANTS PAPA JOHN'S INTERNATIONAL, INC. AND COGNIZANT TECHNOLOGY SOLUTIONS U.S. CORPORATION'S JOINT MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: February 5, 2026<br>Time: 9:30 a.m.<br>Courtroom: B, 15th Floor<br>Judge: Hon. Laurel Beeler |

**TABLE OF CONTENTS**

**Page**

NOTICE OF MOTION ...................................................................................................... 1

STATEMENT OF THE ISSUE TO BE DECIDED .......................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................... 1

    I.     INTRODUCTION ................................................................................ 1

    II.    BACKGROUND ................................................................................. 2

         A.    California Penal Code § 632.7 ................................................. 2

         B.    Plaintiff's Claim ...................................................................... 2

         C.    Cognizant's Services ................................................................ 4

         D.    Call Center Network Design And Equipment.............................. 5

         E.    Expert Report Of David Kalat ................................................. 5

    III.   LEGAL STANDARD............................................................................ 6

    IV.   ARGUMENT ...................................................................................... 7

         A.    Section 632.7 Applies Exclusively To Communications Between Certain Combinations Of Landline, Cellular, Or Cordless Telephones ............................................................................... 7

             1.    The Plain Language Of The Statute And Its Legislative History Confirm That The Statute Applies Only To Covered Telephones ...................................................... 7

             2.    Decisions Applying Section 632.7 To Communications That Had A Covered Telephone On *Either* End Of The Call Are Flawed And Contrary To The Plain Language Of The Statute.................................................................... 10

         B.    There Is No Genuine Dispute That Cognizant Did Not Communicate With Plaintiff Using A Landline, Cellular, Or Cordless Telephone ................................................................ 11

             1.    Cognizant Did Not Communicate Using A "Landline Telephone" ........................................................................ 11

             2.    Cognizant Did Not Communicate Using A "Cordless Telephone" ........................................................................ 14

             3.    Cognizant Did Not Communicate Using A "Cellular Radio Telephone" ........................................................................ 15

    V.    CONCLUSION................................................................................... 15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bostock v. Clayton Cnty., Ga.*,
590 U.S. 644 (2020) .................................................................................................. 11

*Brandywine Commc'ns Techs., LLC v. AT & T Corp.*,
2014 WL 1569544 (N.D. Cal. Apr. 18, 2014) ....................................................... 12

*Byars v. Goodyear Tire & Rubber Co.*,
654 F. Supp. 3d 1020 (C.D. Cal. 2023)........................................................... 10, 11

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ................................................................................................ 6, 7

*City of L.A. v. Barr*,
941 F.3d 931 (9th Cir. 2019)..................................................................................... 11

*Cody v. Boscov's, Inc.*,
2024 WL 2228973 (C.D. Cal. May 6, 2024) ............................................................ 8

*D'Angelo v. FCA US, LLC*,
726 F. Supp. 3d 1179 (S.D. Cal. 2024) ............................................................ 10, 13

*Herrera v. Zumiez, Inc.*,
953 F.3d 1063 (9th Cir. 2020)..................................................................................... 7

*James v. Allstate Ins. Co.*,
2023 WL 8879246 (N.D. Cal. Dec. 22, 2023) .......................................................... 8

*Licea v. Cinmar, LLC*,
659 F. Supp. 3d 1096 (C.D. Cal. 2023)............................................................... 8, 13

*Lottotron, Inc. v. Sci. Games Corp.*,
2003 WL 22075683 (S.D.N.Y. Sept. 8, 2003) ....................................................... 12

*LVRC Holdings LLC v. Brekka*,
581 F.3d 1127 (9th Cir. 2009)................................................................................... 13

*Martin v. Sephora USA, Inc.*,
2023 WL 2717636 (E.D. Cal. March 30, 2023)....................................................... 11

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) ..................................................................................................... 6

*McCabe v. Six Continents Hotels, Inc.*,
2014 WL 465750 (N.D. Cal. Feb. 3, 2014)............................................................ 10

-ii-

*McEwan v. OSP Grp., L.P.*,
2015 WL 13374016 (S.D. Cal. July 2, 2015) .............................................................. 9, 12, 13

*Montantes v. Inventure Foods*,
2014 WL 3305578 (C.D. Cal. July 2, 2014) ................................................................... 2, 8, 13

*Murphy v. Kenneth Cole Prods., Inc.*,
40 Cal. 4th 1094 (2007) ..................................................................................................... 7

*NTCH, Inc. v. Fed. Commc'ns Comm'n*,
841 F.3d 497 (D.C. Cir. 2016) ........................................................................................ 12

*People v. Black*,
32 Cal.3d 1 (1982) ........................................................................................................... 10

*Rodriguez v. Ford Motor Co.*,
722 F. Supp. 3d 1104 (S.D. Cal. 2024) ......................................................................... 8, 11

*United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.*,
4 Cal. 5th 1082 (2018) ...................................................................................................... 11

*Valenzuela v. Keurig Green Mountain, Inc.*,
2023 WL 3707181 (N.D. Cal. May 24, 2023) ................................................................... 1, 7

**Statutes**

2022 Cal. Legis. Serv. 27 (West) (S.B. 1272)......................................................................... 2, 10

Cal. Pen. Code § 632(a) ............................................................................................................ 9, 12

Cal. Pen. Code § 632.7...................................................................................................... *passim*

Cal. Pen. Code § 637.2 ................................................................................................................ 2, 3

Cal. Pen. Code § 632.7(d)(1) .................................................................................................... 15

Cal. Pen. Code § 632.7(d)(1), (2)............................................................................................. 12

Cal. Pen. Code § 632.7(d)(2) ................................................................................................ 14, 15

Cal. Pen. Code § 638(c)(2)......................................................................................................... 10

Cal. Pen. Code §§ 630-638.5 ..................................................................................................... 8

**Other Authorities**

Dictionary.com, *Nine Terms in Everyday Language That Are Retronyms* (June 34,
2021), https://perma.cc/9N3N-E333 ...................................................................... 12

Fed. R. Civ. P. 56(a)......................................................................................................... 6

Federal Communications Commission, *Glossary of Telecommunications Terms*
    (last updated January 28, 2014) ........................................................................ 12

Senate Committee Report, A.B. 2465 (June 9, 1992) .................................................. 13

ThoughtCo., *Retronym (Words)*, https://perma.cc/2E7R-STBQ ................................... 12

iv

**NOTICE OF MOTION**

**PLEASE TAKE NOTICE** that, on February 5, 2026, at 9:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom B at 450 Golden Gate Avenue, San Francisco, California, before the Honorable Laurel Beeler, Defendants Papa John's International, Inc. ("PJI") and Cognizant Technology Solutions U.S. Corporation ("Cognizant") (together, "Defendants") will and hereby do move the Court for summary judgment in Defendants' favor on Plaintiff's claim in this action.

**STATEMENT OF THE ISSUE TO BE DECIDED**

The issue to be decided is whether there is no genuine dispute of material fact and that Defendants are entitled to judgment as a matter of law on Plaintiff's claim because the Cognizant agents who communicated with Plaintiff did not use landline telephones, cordless telephones or cellular radio telephones, as required to state a claim under California Penal Code § 632.7.

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.      INTRODUCTION

Plaintiff Colin Jackson ("Plaintiff") asserts a single cause of action under Section 632.7 of the California Penal Code ("Section 632.7"). He alleges that Defendants PJI and Cognizant, which operates call-center services on behalf of PJI, recorded calls he made to PJI local store numbers in California and a PJI customer service number without his knowledge or consent.

Defendants deny these allegations. But even crediting Plaintiff's allegations as true, which Defendants accept for purposes of this motion, his claim should be dismissed for a straightforward reason. Section 632.7 applies only to communications between combinations of three specific types of telephones that are enumerated in the statute—a "landline telephone," "cordless telephone," or "cellular radio telephone." Cal. Pen. Code § 632.7; *see also, e.g.*, *Valenzuela v. Keurig Green Mountain, Inc.*, 2023 WL 3707181, at \*6 (N.D. Cal. May 24, 2023) (holding that Section 632.7 "unambiguously limits its reach to communications *between* various types of telephones" and does not cover communications between devices not enumerated in the statute). Specifically, for a communication to come within the ambit of the plain language of the statute, one of the enumerated devices must be on both ends of the call, *i.e.*, the defendant (or its agent) must have used a landline

1

telephone, cordless telephone or cellular radio telephone to communicate with the plaintiff. *Id.*; *Montantes v. Inventure Foods*, 2014 WL 3305578, at \*4 (C.D. Cal. July 2, 2014).

Here, the undisputed evidence shows that the Cognizant call center agents who answered Plaintiff's calls did not use one of the telephones covered by Section 632.7. Instead, Cognizant agents used laptop or desktop computers to connect, via the internet, to a software application called Genesys. This software application enables Cognizant agents to answer and route incoming calls over the internet, using Voice Over Internet Protocol (VoIP) technology. Computers running VoIP software that connect to the internet are not landline telephones, cordless telephones, or cellular radio telephones either physically or functionally. Accordingly, there is no genuine dispute that Cognizant's call-center services do not use landline telephones, cordless telephones, or cellular radio telephones within the meaning of Section 632.7 and that Plaintiff's calls were not connected to such telephones. Because Plaintiff cannot satisfy this basic statutory requirement, his claim fails as a matter of law and should be dismissed.

## II.    BACKGROUND

### A.    California Penal Code § 632.7

Section 632.7 is a criminal statute that is privately enforceable through California Penal Code § 637.2. Section 632.7 provides, in relevant part:

> Every person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.

Section 632.7 was enacted in 1992 and most recently amended by the California Legislature in 2022. *See* 2022 Cal. Legis. Serv. 27 (West) (S.B. 1272); p. 10, *infra*.

### B.    Plaintiff's Claim

Plaintiff alleges that PJI is a pizza delivery chain with more than 130 locations in California. Second Amended Complaint, Dkt. 52 ("SAC") ¶ 2. Cognizant provided call-center services to PJI

2

pursuant to a contract; those services included handling calls made to "Papa John's-branded franchisee locations in California" and PJI's customer service numbers. *Id.* ¶¶ 3, 5.

Plaintiff alleges that he made calls to "Papa John's local franchisee-owned store numbers that were routed to [Cognizant's] Order Call Center" (the "Ordering Service"), engaged in conversations with Cognizant employees, and ordered pizzas. *Id.* ¶¶ 5, 22. He alleges that he placed a follow-up call to PJI's customer service number and spoke with a Cognizant employee about problems with his orders (the "Customer Support Service"). *Id.* at 22. He alleges that he placed those calls from within California using a cellular telephone. *Id.* Finally, Plaintiff alleges that during those telephone conversations, the Cognizant employees did not inform him that those conversations were being "recorded and/or monitored." *Id.* ¶ 23.

Plaintiff asserts a single cause of action for violation of Section 632.7, alleging that Cognizant and PJI surreptitiously recorded his telephone conversations without his consent. *Id.* ¶¶ 42-49. He claims statutory damages of $5,000 per violation under California Penal Code § 637.2. SAC pp. 14-15 (Prayer for Relief).

Plaintiff also seeks to certify two classes under Rule 23. The first, defined as the "Customer Service Class," consists of "[a]ll California residents who, while located within California at any time during the applicable limitations period preceding the filing of the Complaint in this matter and through and including the date of resolution, made a telephone call to one or more of Papa John's International Inc.'s customer service numbers and engaged in a telephone conversation with a customer service representative." SAC ¶ 27. The second class, defined as the "Order Call Center Class," consists of "[a]ll California residents who, while located within California at any time during the applicable limitations period preceding the filing of the Complaint in this matter and through and including the date of resolution, made a telephone call to one or more of Papa John's California franchisee local store numbers, were routed to the Papa John's Order Call Center, and engaged in a telephone conversation with a customer service representative at the Papa John's Order Call Center." *Id.* ¶ 28.

For both proposed classes, the class definition is limited to instances where the proposed class member's "communication was transmitted between two cellular radio telephones, a cellular

radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, and were recorded and/or monitored by Defendants without any warning or disclosure at the call outset." *Id.* ¶¶ 27-28. Consistent with the plain text of Section 632.7, Plaintiff's claim in this litigation is limited to calls between a cordless telephone or a cellular radio telephone on one end, and a landline telephone, cordless telephone, or cellular radio telephone on the other.

### C.    Cognizant's Services

Cognizant operates the Ordering Service and the Customer Support Service on behalf of PJI. Declaration of Krishnan Voorappan, dated September 25, 2025 ("Voorappan Decl."), submitted herewith ¶¶ 2, 17. It provides the technology infrastructure and call center agents who answer calls and communicate with PJI customers. *Id.* ¶¶ 5-6, 27-28. The infrastructure and equipment used by the Ordering Service and the Customer Support Service have remained substantially the same since February 2022, which is the earliest date Plaintiff asserts is in the "liability period." *Id.* ¶¶ 3, 18.

The Ordering Service operates on Genesys, an internet-based communications platform that allows call agents to answer and route incoming calls. *Id.* ¶ 5. Cognizant call agents for the Ordering Service log into Genesys using laptop or desktop computers issued by Cognizant. Voorappan Decl. ¶ 7; Report of David Kalat, dated September 26, 2026 ("Kalat Rpt."), submitted herewith ¶ 59. When Plaintiff called the Ordering Service, his calls were automatically transferred to the Genesys platform. Voorappan Decl. ¶ 6.

The Customer Support Service functions similarly. It also operates on the Genesys platform. *Id.* ¶ 20. Cognizant's call agents for the Customer Support Service log into Genesys using computers issued by Cognizant. Voorappan Decl. ¶ 22; Kalat Rpt. ¶ 59. When Plaintiff called PJI's national toll-free number associated with the Customer Support Service, he was automatically transferred to the Genesys platform. Voorappan Decl. ¶ 21.

**D.    Call Center Network Design And Equipment**

The Ordering Service and Customer Support Service operate from call centers located in the Philippines. Voorappan Decl. ¶¶ 4, 19. Call center agents are physically present at the call centers, or occasionally, they are permitted to work from home. *Id*.

Whether physically present at a call center or working from home, call agents use laptop or desktop computers and wired headsets issued to them by Cognizant to log into Genesys, answer calls, and communicate with customers. *Id.* ¶¶ 10, 25; Declaration of Felycette Festejo, dated September 26, 2025 ("Festejo Decl."), submitted herewith ¶ 2. They do not use landline telephones, cordless telephones, or cellular radio telephones. Voorappan Decl. ¶¶ 10, 25.

When call center agents are physically present at Cognizant's call center locations, their computers connect to the internet through, in order: a core switch, physical server, firewall, internet switch, and dedicated internet service provider ("ISP") internet line. *Id.* ¶¶ 13, 28. And call agents who are permitted to work from home receive a stipend from Cognizant for high-speed home internet access. *Id.* ¶¶ 12, 27. To connect to the Genesys platform, they log into Cisco AnyConnect, a virtual private network ("VPN"), from their laptops. *Id.* ¶¶ 15, 30. The VPN allows call agents to pass through the firewalls and access Genesys. *Id.* Once the call agents pass through the firewalls, they use the same server, internet switch, and dedicated ISP lines as used at the call centers. *Id.*

**E.    Expert Report Of David Kalat**

David Kalat is a Certified Telecommunications Analyst and holds various other credentials in information technology and security. Kalat Rpt. ¶¶ 4-14. He analyzed the communications system and equipment that Cognizant uses to operate the Ordering Service and Customer Support Service and reached the following conclusions:

**1.**    The computers, headsets, and software that Cognizant call agents use to answer calls to the Ordering Service and Customer Support Service and communicate with customers lack multiple essential characteristics of a landline telephone, including: (i) they do not include a base unit or handset; (ii) they do not transmit voice or other data through analog signals; (iii) they do not connect to the Public Switched Telephone Network ("PSTN") or include a connector or jack characteristic of such a connection; (iv) they do not use a dedicated point-to-point connection over

5

a physically wired telephone network; and (v) they do not meet the Federal Communications Commission's ("FCC") definition of "landline" telephone service. *Id.* ¶¶ 21, 62-67.

**2.** Pertinent to the statutory definition of "cordless telephone": (i) the computers, headsets, and software that Cognizant call agents used to answer calls to the Ordering Service and Customer Support Service do not connect to the PSTN or include a connector or jack characteristic of such a connection; (ii) they do not transmit analog signals through a PSTN connection; (iii) they do not use a dedicated point-to-point connection over a physically wired telephone network; and (iv) they are not connected to each other by a radio link. *Id.* ¶¶ 22, 68, 69.

**3.** Finally, pertinent to the statutory definition of "cellular radio telephone," no component of the equipment or software used by Cognizant call agents: (i) engages in any wireless transmission of information over a cellular radio telephone network; or (ii) operates in a frequency bandwidth reserved by the FCC for cellular radio telephones. *Id.* ¶¶ 23, 70, 71.

Simply put, the equipment at issue is neither a landline telephone, cordless telephone, or cellular radio telephone in any way, shape, or form.

## III.    LEGAL STANDARD

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). There is no genuine issue for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *Id.* at 586–87.

Moreover, "Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. "The

6

moving party is 'entitled to a judgment as a matter of law' [where] the *nonmoving* party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* at 323 (citations omitted, emphasis added).

## IV.    ARGUMENT

Plaintiff alleges that he used a cellular telephone to call PJI's Ordering Service and Customer Support Service and that the calls were recorded without his consent. Defendants deny Plaintiff's allegations. But even crediting his allegations as true for purposes of this motion, there is no genuine dispute that Plaintiff's calls were never connected to a cordless telephone, cellular radio telephone, or landline telephone on the other end of the call. Because Section 632.7 applies only when such a specified "telephone" appears on each side of the communication, Plaintiff's claim fails as a matter of law and must be dismissed.

### A.    Section 632.7 Applies Exclusively To Communications Between Certain Combinations Of Landline, Cellular, Or Cordless Telephones

#### 1.    The Plain Language Of The Statute And Its Legislative History Confirm That The Statute Applies Only To Covered Telephones

Section 632.7 unambiguously provides that a covered telephone must be used at both ends of a recorded communication. As noted above, Section 632.7 states:

> [e]very person who, without the consent of all of the parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted **between** [1] **two** cellular radio telephones, [2] a cellular radio telephone **and a** landline telephone, [3] **two** cordless telephones, [4] a cordless telephone **and a** landline telephone, or [5] a cordless telephone **and a** cellular radio telephone, shall be punished by a fine . . . or by imprisonment[.]

Cal. Pen. Code § 632.7 (emphases added).

Under California law, statutory interpretation "begins with the words themselves." *Herrera v. Zumiez, Inc.*, 953 F.3d 1063, 1071 (9th Cir. 2020); *Murphy v. Kenneth Cole Prods., Inc.*, 40 Cal. 4th 1094, 1103, (2007) ("[I]f there is no ambiguity in the language, we presume the Legislature meant what it said and the plain meaning of the statute governs.").

Here, the plain meaning of the statute controls. Section 632.7 "unambiguously limits its reach to communications *between* various types of telephones." *Valenzuela*, 2023 WL 3707181, at

*6. *See also Rodriguez v. Ford Motor Co.*, 722 F. Supp. 3d 1104, 1125 (S.D. Cal. 2024) (collecting cases); *James v. Allstate Ins. Co.*, 2023 WL 8879246, at *4 (N.D. Cal. Dec. 22, 2023); *Montantes*, 2014 WL 3305578, at *4; *Cody v. Boscov's, Inc.*, 2024 WL 2228973, at *4 (C.D. Cal. May 6, 2024). "According to this list of included types of telephones, the communication must have a cellular radio or cordless telephone on one side, and a cellular radio, cordless, or landline telephone on the other side." *Montantes*, 2014 WL 3305578, at *4. Section 632.7 therefore applies only to "a narrow set of communication over telephone technology." *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1113 (C.D. Cal. 2023).

The court's reasoning in *Licea* is instructive. With respect to the text of the statute, the court observed that "[t]he plain text of section 632.7 suggests that an exclusive list of five types of calls are included: a communication transmitted between (1) two cellular radio telephones, (2) a cellular radio telephone and a landline telephone, (3) two cordless telephones, (4) a cordless telephone and a landline telephone, or (5) a cordless telephone and a cellular radio telephone. According to this list, a communication covered by section 632.7 must have a cellular radio or cordless telephone on one side, and a cellular radio, cordless, or landline telephone on the other side." *Id.* at 1112. The *Licea* court further rejected plaintiffs' argument that the statute's broad definition of "communication" (which "includes, but is not limited to, communications transmitted by voice, data, or image, including facsimile") reflected the Legislature's intent to include "new and emerging technologies," including internet-based communications, within the scope of Section 632.7. *Id.* Because the text was "unambiguous," the *Licea* court need not have considered the statute's legislative history. But the court nevertheless did so and concluded that "the legislative history confirms the plain reading of the statute which does not extend protection to communications over the internet." *Id.*

While the Court here should also start and end its analysis with the statute's plain text, the Legislature's intent to regulate communications between only three specifically enumerated types of telephones—and not all telephones or telephony—in Section 632.7 is evident from its legislative history and reading the statute in context with other provisions of the California Invasion of Privacy Act ("CIPA"), *i.e.*, California Penal Code §§ 630-638.5.

8

Section 632.7 was preceded by Section 632, one of the original provisions of CIPA enacted in 1967, which protects confidential communications carried on by means of a "telephone." However, Section 632 only applies to traditional, landline telephones because at the time of its enactment, "only one type of phone existed—landline phones." *McEwan v. OSP Grp., L.P.*, 2015 WL 13374016, at *3 (S.D. Cal. July 2, 2015); *see also id.* at *4 (holding that "'telephone,' as it is found in section 632(a) means a landline telephone"). Recognizing that Section 632 only applied to communications between traditional landline telephones, the Legislature enacted Section 632.5 and 632.6 in 1991 and Section 632.7 in 1992 to extend some of the protections in Section 632 to communications between a "cordless telephone" or "cellular radio telephone" on one end, and a "cordless telephone," "cellular radio telephone," or "landline telephone" on the other. Each of these provisions is a scalpel, not a blunt instrument. It defines precisely what type of communications and combinations of devices are covered, subject to various limitations and exceptions. The Legislature understood that expanding the protections originally created in Section 632 against eavesdropping and recording of communications between traditional, landline telephones required it to act affirmatively by expressly amending CIPA, but the Legislature has chosen to expand these protections only in limited and carefully defined circumstances.

The VoIP technology at issue in this case differs from traditional landline telephones, cordless telephones, and cellular radio telephones in numerous respects. Among other differences, VoIP does not connect to the public switched telephone network (PSTN). *Id.* ¶¶ 54-55. Instead, it uses software to digitize voice signals into data packets that are transmitted over the internet. *Id.* ¶ 50. Each data packet is wrapped in metadata that identifies the IP address of the sender and intended recipient. *Id.* VoIP also uses a Session Initiation Protocol (SIP), which is a signaling protocol used for establishing, managing, and terminating calls over an IP network. *Id.* ¶ 52. When a VoIP connection is established, the router checks the metadata associated with each data packet to ensure that it matches the network address for both the sender and intended recipient. *Id.* ¶¶ 50, 52.

Amendments to other provisions of CIPA not at issue in this case further show that when the Legislature intended to cover VoIP and other internet-based communications, it has said so directly. For example, in 2006, the Legislature added Section 638, which prohibits the unauthorized

9

purchase or sale of call records, "whether the call was made from or to a telephone connected to the public switched telephone network," a "cordless phone," or "a telephony device operating over the Internet utilizing voice over Internet protocol," among other devices. Cal. Pen. Code § 638(c)(2). In 2015 and 2022, the Legislature amended CIPA to expressly address and define "electronic communications." *See id.* §§ 638.50-52. The Legislature also added Section 632.01 in 2016 to prohibit the disclosure of confidential communications with health care providers "in any forum, including. . . Internet Web sites and social media," defined as "an electronic service or account, or electronic content, including, but not limited to . . . instant and text messages, email, online services or accounts, or Internet Web site profiles or locations." *Id.* § 632.01. These examples demonstrate that when the Legislature has chosen to regulate new or emerging communication technologies under CIPA, including VoIP (as evidenced by the addition of Section 638 in 2006), it has done so expressly by amending or expanding the statute.

In contrast with these other provisions in CIPA, no such amendments have been made to Section 632.7 in the decades since the use of VoIP technology has become widespread. To the contrary, in 2022, the Legislature amended the statute but did not further define or expand the enumerated list of covered devices. *See* 2022 Cal. Legis. Serv. 27 (West) (S.B. 1272). It is well settled that the "failure to make changes in a given statute in a particular respect when the subject is before the Legislature, and changes made in other respects, is indicative of an intention to leave the law unchanged in that respect." *People v. Black*, 32 Cal.3d 1, 9 (1982) (citation and internal quotation marks omitted); *D'Angelo v. FCA US, LLC*, 726 F. Supp. 3d 1179, 1204 (S.D. Cal. 2024) ("The fact that the Legislature had an opportunity to extend § 632.7 to internet technology, but chose not to, is indicative of its intent not to expand the provision.").

> **2.** **Decisions Applying Section 632.7 To Communications That Had A Covered Telephone On *Either* End Of The Call Are Flawed And Contrary To The Plain Language Of The Statute**

Plaintiff may point to a handful of non-binding decisions that have held that Section 632.7 extends to communications that had a landline telephone, cordless telephone, or cellular radio telephone on *either* end of the call. *See, e.g.*, *McCabe v. Six Continents Hotels, Inc.*, 2014 WL 465750, at *3-4 (N.D. Cal. Feb. 3, 2014); *Byars v. Goodyear Tire & Rubber Co.*, 654 F. Supp. 3d

10

1020, 1028 (C.D. Cal. 2023). The Court should not follow these decisions or their flawed analysis of Section 632.7, which cannot be squared with the statute's plain text. Section 632.7 expressly and unambiguously provides that a call must be connected "***between***" "***two***" cordless or cellular radio telephones or "***between***" a cordless or cellular radio telephone "***and***" a landline telephone to be covered by the statute. *See* pp. 7-8, *supra*. These outlier decisions are against the "overwhelming majority" of cases holding that Section 632.7 "only applies to the five types of calls enumerated" in the statute. *Rodriguez*, 722 F. Supp. at 1125 (collecting cases) (citation omitted); *see also Martin v. Sephora USA, Inc.*, 2023 WL 2717636, at \*16 (E.D. Cal. March 30, 2023) ("This Court similarly declines to find *Goodyear* persuasive, and elects instead to adopt the interpretation of § 632.7 derived from its plain reading, joining the rulings articulated by the apparent majority of California state and district courts substantively addressing this issue.").

"When the express terms of a statute give us one answer and extratextual considerations suggest another, it's no contest. Only the written word is the law, and all persons are entitled to its benefit." *Bostock v. Clayton Cnty., Ga.*, 590 U.S. 644, 653 (2020). Section 632.7 unambiguously applies only to communications between five enumerated combinations of covered telephones. As explained below, there is no genuine dispute that Cognizant did not use such a telephone, and accordingly Plaintiff's claim should be dismissed.

**B.      There Is No Genuine Dispute That Cognizant Did Not Communicate With Plaintiff Using A Landline, Cellular, Or Cordless Telephone**

**1.      Cognizant Did Not Communicate Using A "Landline Telephone"**

Section 632.7 does not define the term "landline telephone," so the ordinary meaning of the term, as it is used in the context of the statute, applies. *City of L.A. v. Barr*, 941 F.3d 931, 940 (9th Cir. 2019) ("Where the statute does not define the relevant terms, we give them their ordinary, contemporary, common meaning, and may consult dictionary definitions. … [W]e must also look to the language and design of the statute as a whole[] and read the specific words with a view to their place in the overall statutory scheme." (internal quotation marks and citation omitted)); *United Riggers & Erectors, Inc. v. Coast Iron & Steel Co.*, 4 Cal. 5th 1082, 1089 (2018) ("We begin with

11

the text, construing words in their broader statutory context and, where possible, harmonizing provisions concerning the same subject.").

As noted above, Section 632 of CIPA, enacted in 1967, refers only to "telephones." Cal. Pen. Code § 632(a). That is because when Section 632 was enacted, "only one type of phone existed—landline phones." *McEwan*, 2015 WL 13374016, at *3. In Section 632.7, enacted in 1992, the Legislature used the term "landline telephone" specifically to differentiate traditional, wired telephones from "cordless telephones" and "cellular radio telephones," both of which had since come into use. Indeed, "landline telephone" is a *retronym*, that is, "a new term for an existing object or idea to distinguish it from a later development or invention."[1]

Consistent with this meaning, the FCC—whose rules and regulations concerning bandwidth frequencies were expressly incorporated by the Legislature into the statutory definitions of "cordless telephone" and "cellular radio telephone" in Section 632.7, *see* Cal. Pen. Code § 632.7(d)(1), (2)—defines a "landline" in the context of telecommunications as "[t]raditional wired phone service." Federal Communications Commission, *Glossary of Telecommunications Terms* (last updated January 28, 2014) ("FCC *Glossary*"), Provance Decl., Ex. 4 at 3. The Glossary of Telecommunications Terms published by the General Service Administration ("Federal Standard 1037 C") likewise defines "land line" as "[a] colloquial name for conventional telephone facilities." Provance Decl., Ex. 3, at L-1.[2] Because "landline telephone" is unambiguous, it is unnecessary to resort to the legislative history surrounding the enactment of Section 632.7 for the meaning of the term. Nevertheless, when describing Section 632.7, the Legislature used the term "landline" to refer

[1]   Dictionary.com, *Nine Terms in Everyday Language That Are Retronyms* (June 34, 2021), https://perma.cc/9N3N-E333 ("Around the 1950s, the expression *landline phone* began to be used by ham radio enthusiasts and in military contexts. It was necessary to make clear that they were communicating using the traditional telephone rather than newer cordless radio technologies."); ThoughtCo., *Retronym (Words)*, https://perma.cc/2E7R-STBQ ("A *retronym* is a new word or phrase (such as *snail mail, analog watch, landline phone, cloth diaper, two-parent family, natural turf*, and *kinetic warfare*) created for an old object or concept whose original name has become associated with something else or is no longer unique.").

[2]   Courts routinely rely on both the FCC *Glossary* and Federal Standard 1037 C for the meaning of telecommunications terms when construing statutes, patents, and similar documents. *See, e.g.*, *NTCH, Inc. v. Fed. Commc'ns Comm'n*, 841 F.3d 497, 499 (D.C. Cir. 2016); *Brandywine Commc'ns Techs., LLC v. AT & T Corp.*, 2014 WL 1569544, at *9 n.8 (N.D. Cal. Apr. 18, 2014); *Lottotron, Inc. v. Sci. Games Corp.*, 2003 WL 22075683, at *4 (S.D.N.Y. Sept. 8, 2003).

12

to "traditional" telephones that "employ 'closed' wire-to-wire systems." Senate Committee Report, A.B. 2465 (June 9, 1992), Provance Decl., Ex. 1 at 3. The author of A.B. 2465, Lloyd Connelly, used the same language to describe the "landline" telephones covered by Section 632.7. *See* Author's Statement of Intent, Provance Decl., Ex. 2 at 1.

Accordingly, a "landline telephone" means a traditional, wired telephone. *Cf. Licea*, 659 F. Supp. 3d at 1111–12 (rejecting argument "urg[ing] this Court to interpret 'landline telephone' as inclusive of computer equipment"). And the defining characteristics of a landline telephone are a handset with a microphone and speaker that is physically connected to a base unit, and a base unit that is physically connected to the PSTN via a jack and copper wire that transmits analog signals to other telephones on the PSTN. Kalat Rpt. ¶¶ 21, 33, 38. Any attempt to expand "landline telephone" beyond its ordinary meaning to embrace internet-based communications or anything that otherwise could be called a "telephone" in some sense is contrary to the Legislature's intent, as recognized by numerous decisions including *Valenzeula*, *Montantes*, *Licea*, and *D'Angelo*, *supra*.

Any such construction also would violate the canon that the Court should interpret Section 632.7 in favor of Defendants under the rule of lenity. "It is well established that 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity.'" *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134 (9th Cir. 2009) (quoting *United States v. Carr*, 513 F.3d 1164, 1168 (9th Cir. 2008)). In other words, if there is "more than one reasonable interpretation" of a criminal statute, it "should be interpreted in favor of the defendant." *McEwan*, 2015 WL13374016, at *4 (applying the rule of lenity to interpret Section 632). Here, just like Section 632, Section 632.7 is a criminal statute that imposes fines and imprisonment for up to one year in the state penitentiary for violations. Applying the rule of lenity further compels the conclusion that "landline telephone" means what it says and has no broader or more expansive meaning. *See id.*

Once Section 632.7 is properly construed, summary judgment is inescapable. The Cognizant agents who answered Plaintiff's calls to the Ordering Service and Customer Support Service did not use landline telephones to answer calls or communicate with him. *See* Voorappan Decl. ¶¶ 10, 25; Festejo Decl. ¶¶ 2, 4-5. Defendants' expert also opines that the technology used by

13

Cognizant call agents in the Ordering Service and Customer Support Service cannot be considered a "landline telephone" because: (i) the analog base unit and handset that are characteristic of landline telephones are not present (Kalat Rpt. ¶¶ 21, 65); (ii) landline telephones can only transmit analog signals, whereas the Cognizant Technology transmits data digitally (*id.* ¶¶ 21, 62); (iii) landline telephones connect to the PSTN via connector jacks specific to the transmission of analog signals, whereas the Cognizant Technology connects to non-PSTN networks through connectors designed for the transmission of digital signals (*id.* ¶¶ 21, 66); (iv) landline telephones use a dedicated point-to-point connection over a physically wired telephone network, whereas the Cognizant technology uses an internet transmission protocol (*id.* ¶¶ 21, 63); and (v) Cognizant's technology does not meet the FCC's definition of "landline" telephone service (*id.* ¶¶ 21, 67). Put simply, there is no question that computers running VoIP software are not "traditional" or "conventional" telephones, precluding any argument that Cognizant used "landline telephones" within the meaning of Section 632.7.

### 2.    Cognizant Did Not Communicate Using A "Cordless Telephone"

Section 632.7 defines a "cordless telephone" as "a two-way, low power communication system consisting of two parts, a 'base' unit which connects to the public switched telephone network and a handset or 'remote' unit, that are connected by a radio link and authorized by the Federal Communications Commission to operate in the frequency bandwidths reserved for cordless telephones." Cal. Pen. Code § 632.7(d)(2).

The Ordering Service and Customer Support Service did not use cordless telephones to answer calls or communicate with customers, including Plaintiff. *See* Voorappan Decl. ¶¶ 10, 25; Festejo Decl. ¶¶ 2-5. Cordless telephones have all the characteristics of landline telephones, the only difference being that the handset portion of the cordless telephone (with the microphone and speaker) is wirelessly connected to the base station via a radio link. Kalat Rpt. ¶¶ 22, 68, 69. Thus, for all of the reasons that Cognizant's technology is not a landline telephone, it is not a cordless telephone. *See id.*; *see also* pp. 11-14, *supra*. These reasons include, as specifically relevant to the statutory definition of "cordless telephone," that Cognizant's technology does not connect to the

14

PSTN, have a connector or jack characteristic of such a connection, or transmit analog signals, all as the base unit of a cordless telephone must. Cal. Pen. Code § 632.7(d)(2); Kalat Rpt. ¶¶ 22, 68.

Moreover, none of the computers, wired headsets, and software that Cognizant call agents used to communicate with Plaintiff are connected by a radio link, as are the base unit and remote handset of a "cordless telephone." Cal. Pen. Code § 632.7(d)(2); Kalat Rpt. ¶¶ 22, 69. For this additional reason, there can be no genuine dispute that Cognizant agents did not communicate with Plaintiff using "cordless telephones" within the meaning of Section 632.7.

### 3.     Cognizant Did Not Communicate Using A "Cellular Radio Telephone"

Section 632.7 defines a "cellular radio telephone" as "a wireless telephone authorized by the Federal Communications Commission to operate in the frequency bandwidth reserved for cellular radio telephones." Cal. Pen. Code § 632.7(d)(1).

The Ordering Service and Customer Support Service did not use cellular radio telephones to answer calls or communicate with customers. *See* Voorappan Decl. ¶¶ 10, 25. Further, the computers and headsets used by Cognizant call center agents to communicate with Plaintiff do not satisfy the statutory requirement that they are "authorized by the Federal Communications Commission to operate in the frequency bandwidth reserved for cellular radio telephones." Cal. Pen. Code § 632.7(d)(1). The FCC has authorized three bandwidths for cellular telephones: 698-746 MHz, the bands 824-849 MHz and 869-894 MHz, and the bands 2305-2320 MHz and 2345-2360 MHz. Kalat Rpt. ¶ 47. Cognizant's equipment does not operate in any of the bandwidths reserved for cellular radio telephone communications. *Id.* ¶ 71. Accordingly, Cognizant agents did not communicate with Plaintiff using cellular radio telephones within the meaning of Section 632.7.

### V.     CONCLUSION

There is no genuine dispute that Plaintiff's calls were not answered by a cordless telephone, a cellular radio telephone, or a landline telephone, as required by the plain language of Section 632.7. Accordingly, Plaintiff's claim should be dismissed as a matter of law.

Dated:  September 26, 2025

**MAYER BROWN LLP**

By:   */s/ Matthew D. Provance*
        Matthew D. Provance

*Attorneys for Defendant Cognizant Technology Solutions U.S. Corporation*


**DUANE MORRIS LLP**

By:   */s/ Sean Patterson*
        Sean Patterson (SBN 234565)

*Attorneys for Defendant Papa John's International, Inc.*

16

**<u>ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(I)</u>**

Pursuant to Civil Local Rule 5-1(i), I, Matthew D. Provance, hereby attest that I have obtained the concurrence in the filing of this document from the signatory to this document.

I declare under penalty of perjury under the law of the United States that the foregoing is true and correct.

Dated: September 26, 2025

*/s/ Matthew D. Provance*
Matthew D. Provance

17

1752603759